# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| CHRISTINA COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TANJA D. BATTLE, in her official capacity as | ) | Civil Action No. 1:14-cv-03824-LMM |
| Executive Director of the Georgia Board of | ) | |
| Dentistry, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

---

Paul Sherman*
Mahesha Subbaraman*
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org;
msubbaraman@ij.org
* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

Yasha Heidari (GA Bar No. 110325)
Heidari Power Law Group, LLC
P.O. Box 79217
Atlanta, GA 30357
Tel: (404) 939-2742
Fax: (404) 601-7852
Email: yasha@hplawgroup.com

*Local Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ................................................................................1

ARGUMENT AND CITATION OF AUTHORITY ............................3

I.  The *Rooker-Feldman* Doctrine Does Not Apply to Unreviewed State Administrative Decisions. ......................................................3

II.  *Res Judicata* Also Does Not Apply to Unreviewed State Administrative Decisions. ..........................................................5

III.  Neither the *Burford* Nor *Younger* Abstention Doctrines Applies to Ms. Collins's Narrow, Prospective, As-Applied Constitutional Claims. ........................................................................8

　A.  *Burford* Abstention. ...............................................8

　B.  *Younger* Abstention. ...............................................11

IV.  Declaratory and Injunctive Relief Are Available Remedies in Official-Capacity Lawsuits. .................................................13

V.  Ms. Collins's Complaint Alleges Viable Equal-Protection and Due-Process Claims, and Properly Preserves Her Privileges-or-Immunities Claim. .......................................................15

　A.  Equal Protection. ...................................................15

　　1.  The Board misconstrues Ms. Collins's equal-protection claim. ..........................................18

**Page**

  2. **The trial-court decisions in *Martinez* and *Westphal*
provide no basis for dismissing Ms. Collins's properly
pled claims.** .............................................................................21

  3. **The Board's request that this Court take judicial
notice of facts outside the Complaint is improper,
and the alleged facts are irrelevant.** ......................................23

 B. **Due Process.** .......................................................................................26

 C. **Privileges or Immunities.** ................................................................29

**CONCLUSION** ...............................................................................................30

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**Page(s)**

*Alacare, Inc.-N. v. Baggiano*, 785 F.2d 963 (11th Cir. 1986) ..................................8

*Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336 (1989) ..............28

*Alyshah Immigration Agency, Inc. v. State Bar of Georgia*,
    No. 1:04-CV-1017-TWT, 2005 U.S. Dist. LEXIS 43624
    (N.D. Ga. Mar. 11, 2005) ...........................................................................4, 6

*Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013) ....................................20

*Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000) ......................................................13

*Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260 (11th Cir. 2000) ...............................8

*BT Investment Managers, Inc. v. Lewis*, 559 F.2d 950 (5th Cir. 1977) ....................9

*Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977) ................28

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .............................28

*Conn v. Gabbert*, 526 U.S. 286 (1999) ...................................................................26

*Cornwell v. Cal. Bd. of Barbering & Cosmetology*, 962 F. Supp. 1260
    (S.D. Cal. 1997) ............................................................................................23

*Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) ..........................27, 28

*Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) ............................................23, 27

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .........................................3

*Dep't of Transp. v. Revco Disc. Drug Ctrs., Inc.*, 746 S.E.2d 631
    (Ga. Ct. App. 2013) .......................................................................................7

**Page(s)**

*Eck v. Battle*, No. 1:14-cv-00962-MHS, slip op.
(N.D. Ga. July 28, 2014) ........................................................................*passim*

*Flint River Mills v. Henry,* 216 S.E.2d 895 (Ga. 1975)............................................7

*For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209
(11th Cir. 2002) ............................................................................................11

*Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir. 1987)..............................5

*Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982).....................25

*Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612 (1985)....................................28

*James v. Strange*, 407 U.S. 128 (1972) ..................................................................29

*Kentucky v. Graham*, 473 U.S. 159 (1985)..............................................................14

*Lawrence v. Texas*, 539 U.S. 558 (2003).................................................................28

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......................................20

*Lindsey v. Normet*, 405 U.S. 56 (1972) ...................................................................29

*Martinez v. Mullen*, 11 F. Supp. 3d 149 (D. Conn. 2014) .................................21, 22

*Mayer v. City of Chicago*, 404 U.S. 189 (1971) ......................................................29

*Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) ..........................................23, 30

*Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985) .................................................28

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423
(1982)............................................................................................................11

*Moore v. Bonner*, 695 F.2d 799 (4th Cir. 1982) ........................................................8

iv

**Page(s)**

*Moore v. City of Asheville*, 396 F.3d 385 (4th Cir. 2005) .......................................12

*Narey v. Dean,* 32 F.3d 1521 (11th Cir. 1994) ........................................................4

*Norfolk S. Corp.v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (11th Cir. 2004)..............6

*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007)................20

*Patsy v. Bd. of Regents of the State of Fla.,* 457 U.S. 496 (1982)............................7

*Plyler v. Doe*, 457 U.S. 202 (1982)........................................................................28

*Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990) .................................................19

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004)................................................22

*Quinn v. Millsap*, 491 U.S. 95 (1989)....................................................................28

*Reed v. Reed*, 404 U.S. 71 (1971) ..........................................................................29

*Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991)........................................9, 14

*Romer v. Evans*, 517 U.S. 620 (1996) ....................................................................28

*Saenz v. Roe*, 526 U.S. 489 (1999) ........................................................................30

*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997)..................................................24

*Slaughter-House Cases*, 83 U.S. 36 (1872).......................................................29, 30

*St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013)............................*passim*

*Turner v. Fouche*, 396 U.S. 346 (1970)...................................................................29

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) .......................................28, 29

**Page(s)**

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994)..............................................22

*United States v. Lopez*, 514 U.S. 549 (1995).............................................................28

*United States v. Morrison*, 529 U.S. 598 (2000).......................................................28

*Vil. of Willowbrook v. Olech*, 528 U.S. 562 (2000)..................................................28

*Westphal v. Northcutt*, No. 01-cv-2013-901678-EAF, slip op.
(Ala. Cir. Ct., Jefferson Cnty. Oct. 3, 2014)..............................................21, 22

*Westphal v. Northcutt*, No. 01-cv-2013-901678-EAF, slip op.
(Ala. Cir. Ct., Jefferson Cnty. Oct. 1, 2015)..............................................21, 22

*Williams v. Vermont*, 472 U.S. 14 (1985)..................................................................28

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ...............................................................11

*Zobel v. Williams*, 457 U.S. 55 (1982)......................................................................28

## Code Provisions and Rules

42 U.S.C. § 1983.............................................................................*passim*

Fed. R. Evid. 201(b).............................................................................20

## INTRODUCTION

The Dental Board's motion to dismiss should be denied because it is substantively identical to a motion that the Board filed—and that was denied—in the related case of *Eck v. Battle*, No. 1:14-cv-00962-MHS, slip op. at 25 (N.D. Ga. July 28, 2014) (ECF No. 33) (attached as Exhibit 1).[1] As with its previous motion, the Dental Board has taken a kitchen-sink approach, raising no less than six grounds on which it argues this case should be dismissed. What the Dental Board does not do, however, is make any effort to respond to the decision that Senior Judge Marvin Shoob handed down regarding the Board's previous motion in *Eck*, which carefully considered each of the Board's arguments and found them to be meritless.

As with their previous motion, the Board's current motion demonstrates that it fundamentally misconceives Plaintiff's Complaint and the relief she is seeking. Plaintiff Christina Collins is a teeth-whitening entrepreneur who, until recently, sold customers over-the-counter teeth-whitening products and provided them with a clean, comfortable environment in which to apply those products to their own

---

[1] Undersigned counsel Paul Sherman and Yasha Heidari also represented Plaintiff Trisha Eck before her untimely death mooted her constitutional challenge to Georgia's teeth-whitening regulations. *See* Pl.'s Unopposed Mot. for Voluntary Dismissal at 1–2, *Eck*, No. 1:14-CV-00962-MHS (N.D. Ga. Dec. 1, 2014) (ECF No. 40); *see also Eck*, No. 1:14-CV-00962-MHS (N.D. Ga. Dec. 4, 2014) (order granting voluntary dismissal) (ECF No. 41).

teeth, just as they would at home. But Ms. Collins was forced to close her business when the Georgia Board of Dentistry accused her of violating Georgia's Dental Practice Act, subjecting her to potentially ruinous fines and imprisonment for felony unlawful practice of dentistry. To avoid being punished, Ms. Collins agreed to cease and desist from any act or practice that requires licensure under the Act.

Ms. Collins has not launched a collateral attack on the Board's past cease-and-desist order. She does not seek a declaratory ruling vindicating her for past conduct. Instead, she requests entirely prospective relief, which would make clear whether the Board may constitutionally prohibit her from offering teeth-whitening services in the future and enjoin the Board from initiating future enforcement actions against her for offering teeth-whitening services insofar as this Court determines she has a constitutional right to do so.

Moreover, this case is not an attack on Georgia's legitimate authority to protect public health by regulating the practice of dentistry. Rather, Ms. Collins has plausibly alleged that a *particular application* of Georgia's Dental Practice Act fails to promote public health and safety, and instead serves only to protect licensed dentists from honest competition by non-dentist entrepreneurs. Under the Fourteenth Amendment, that is not a legitimate use of government power. Accordingly, the Board's motion to dismiss should be denied.

## ARGUMENT AND CITATION OF AUTHORITY

The Defendant members of the Georgia Board of Dentistry have moved to dismiss Plaintiff Christina Collins's Complaint on the grounds that: (1) this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine; (2) Ms. Collins's claims are barred by *res judicata*; (3) the Court should abstain from deciding this case under either the *Burford* or *Younger* abstention doctrines; (4) neither declaratory nor injunctive relief are available against the Board under 42 U.S.C. § 1983; and finally, (5) the Complaint fails to state a claim upon which relief can be granted. As the district court found in *Eck* and as explained in more detail below, each of these arguments is meritless.[2]

## I. The *Rooker-Feldman* Doctrine Does Not Apply to Unreviewed State Administrative Decisions.

The Board argues that "[t]his Court lacks jurisdiction" to hear this case "under the *Rooker-Feldman* doctrine," Defs.' Br. 10,[3] which prohibits federal district courts from reviewing the final judgment of a state-court judicial proceeding. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). But as

---

[2] As explained at page 29, *infra*, Ms. Collins concedes that Count 3 of her Complaint, alleging a violation of the Privileges or Immunities Clause of the Fourteenth Amendment, is foreclosed by current Supreme Court precedent. Ms. Collins has properly pled that claim to preserve it for future appellate review.

[3] All references to Defendants' Brief in Support of Defendants' Motion to Dismiss (ECF No. 38-1) are denoted as "Defs.' Br."

the district court correctly held in *Eck*, the Board's argument is "foreclosed" by the Eleventh Circuit's decision in *Narey v. Dean,* 32 F.3d 1521 (11th Cir. 1994), which establishes "that the *Rooker-Feldman* doctrine 'applies only to state court decisions, not to state administrative decisions.'" *Eck*, slip op. at 8–9 (quoting *Narey*, 32 F.3d at 1525). As the district court further noted, the *Narey* court "specifically rejected" the Board's argument that "'the [*Rooker-Feldman*] doctrine should be applied to any state administrative proceeding that is judicial in nature.'" *Id.* at 9. Finally, the district court properly rejected the Board's reliance upon *Alyshah Immigration Agency, Inc. v. State Bar of Georgia*, No. 1:04-CV-1017-TWT, 2005 U.S. Dist. LEXIS 43624 (N.D. Ga. Mar. 11, 2005), explaining that *Alyshah* "is distinguishable because it involved a consent order entered by a state court rather than a state administrative agency." *Eck*, slip op. at 9.

The Board does not acknowledge, much less try to refute, the district court's reasoning in *Eck*. Instead, it simply repeats arguments that have already been found to be irreconcilable with binding precedent from the Eleventh Circuit. *See* Defs.' Br. 10–12. Thus, like the court in *Eck*, this Court should find that it "has subject matter jurisdiction over plaintiff's complaint." *Eck*, slip. op. at 9.

4

## II.   *Res Judicata* Also Does Not Apply to Unreviewed State Administrative Decisions.

The Board next argues that Ms. Collins's constitutional claims are barred by *res judicata* because Ms. Collins could have asserted these claims in a state-court proceeding and because, under Georgia law, a voluntary cease-and-desist order has preclusive effect. *See* Defs.' Br. 12–13. Again, as the district court found in *Eck*, this argument is foreclosed by Eleventh Circuit precedent. *See Eck*, slip op. 10–11.

The controlling case is *Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir. 1987). In that case, the Eleventh Circuit held that "unreviewed state agency decisions will not receive claim preclusive effect in a section 1983 action regardless of whether a court of the state from which the judgment arose would bar the section 1983 claim." *Id.* at 1064–65. Thus, as the district court concluded in *Eck*, "the unreviewed Voluntary Cease and Desist Order has no claim preclusive effect in this case regardless of whether the Georgia courts would give it such effect." *Eck*, slip op. at 11. The district court further noted that the Board's "reliance on *Alyshah* [was] again misplaced because that case involved a consent order entered by a state court rather than a state administrative agency." *Id.*

In addition to the grounds on which the district court in *Eck* rejected the Board's *res judicata* argument, there are three additional grounds that also support this conclusion: (1) the lack of express language in the order encompassing Ms.

5

Collins's constitutional claims; (2) the absence of two important *res judicata* elements (identity of claims and full and fair opportunity to litigate); and (3) the general rule that civil-rights plaintiffs may bring § 1983 claims without first exhausting possible administrative or state-law remedies.

First, when an earlier action is resolved by consent order—as Ms. Collins's administrative proceeding was—*res judicata* applies only against "claims which may properly be encompassed by the language of the consent order." *Alyshah*, 2005 U.S. Dist. LEXIS 43624 at *7; *see also Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288, 1291 (11th Cir. 2004). But the only matter resolved by the consent order in this case was the Board's warning of past "[p]otential violations" of the Dental Practice Act. Defs.' Mot. to Dismiss, Ex. A at 4 (ECF No. 38-2). Nothing in the order declares that the Board's prohibition on teeth-whitening services is constitutional. Indeed, the order contains no language about teeth whitening or prospective constitutional questions at all, and Ms. Collins would not have signed the agreement if such language had been included. Accordingly, Ms. Collins's constitutional claims are not encompassed by the consent order and are therefore not barred by *res judicata*.

Second, *res judicata* does not apply because there is no identity of claims, nor did Ms. Collins have a full and fair opportunity to litigate the issues presented

6

in this case. *See Dep't of Transp. v. Revco Disc. Drug Ctrs., Inc.*, 746 S.E.2d 631, 633 (Ga. Ct. App. 2013). There is no identity of claims because the prior Board proceeding addressed potential *past* violations, with the consent order being the "final disposition of any proceedings [then] before the Board." Defs.' Mot. to Dismiss, Ex. A at 4 (ECF No. 38-2). The claims in this case are *prospective* and concern whether Ms. Collins's teeth-whitening services may constitutionally be prohibited by the Board. Further, there was no full and fair opportunity to litigate these constitutional claims in the earlier proceeding because under Georgia law, "an administrative hearing officer or board . . . is powerless to declare [a statute] unconstitutional." *Flint River Mills v. Henry*, 216 S.E.2d 895, 896–97 (Ga. 1975). The administrative process thus did not provide and could not have provided Ms. Collins with the full and fair opportunity to litigate her federal constitutional claims that *res judicata* requires.

Finally, while the Board's argument is framed in terms of *res judicata*, what it really seeks to accomplish here is to impose an administrative exhaustion requirement on Ms. Collins before she may bring her § 1983 claim in this Court. But the Supreme Court has stated "categorically that exhaustion is not a prerequisite to an action under § 1983." *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 501 (1982). The Eleventh Circuit has recognized the same principle,

emphasizing that the purpose of § 1983 is "to provide an alternate, *supplemental* avenue for relief to persons who almost always have an additional available remedy at state law." *Alacare, Inc.-N. v. Baggiano*, 785 F.2d 963, 967 (11th Cir. 1986) (emphasis in original); *see also Moore v. Bonner*, 695 F.2d 799, 801 (4th Cir. 1982) (noting that civil-rights plaintiffs cannot be deprived of their choice of a federal forum over a state forum "by a state rule which gives preclusive effect to unappealed state administrative decisions"). Accordingly, Ms. Collins need not exhaust state-law remedies before bringing her constitutional claims to this Court, and there is nothing in the doctrine of *res judicata* that provides otherwise.

## III.  Neither the *Burford* Nor *Younger* Abstention Doctrines Applies to Ms. Collins's Narrow, Prospective, As-Applied Constitutional Claims.

The Dental Board also argues that this Court should abstain from hearing this case under *Burford* or *Younger* abstention. Defs.' Br. 14–17. As explained below—and as the district court concluded in *Eck*—these arguments are meritless.

### A.  *Burford* Abstention.

*Burford* abstention is a rarely used form of abstention intended to "protect[] complex state administrative processes from undue federal interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (citation and quotation marks omitted). The Board argues that *Burford* abstention is called for here because a ruling by this Court would allegedly disrupt Georgia's "comprehensive

scheme to regulate the practice of dentistry." Defs.' Br. 15. But as the district court concluded in *Eck*, federal appellate courts—including the Eleventh Circuit—have routinely declined to apply *Burford* abstention in similar cases, even when reviewing constitutional challenges to dental regulations. *See Eck*, slip op. at 12–14.

For example, in *BT Investment Managers, Inc. v. Lewis*, which involved a constitutional challenge to part of the Florida Banking Code, the former Fifth Circuit refused to apply *Burford* abstention because "[a]lthough the challenged statutes are part of a large and perhaps complex regulatory scheme . . . appellants focus their attack upon a single statute whose possible invalidation could scarcely be expected to disrupt Florida's entire system of banking regulation." 559 F.2d 950, 955 (5th Cir. 1977). Likewise, in *Rindley v. Gallagher*, which involved a constitutional challenge to a Florida Board of Dentistry policy, the Eleventh Circuit refused to apply *Burford* abstention because "Florida's ability to regulate professionals will not be seriously affected if the [policy] is declared unconstitutional." 929 F.2d 1552, 1557 (11th Cir. 1991).

Based on these cases, the district court in *Eck* concluded that *Burford* abstention was equally inappropriate with regard to the Board's teeth-whitening rule because, "although Georgia's Dental Practice Act may be a large and perhaps

9

complex regulatory scheme, plaintiff focuses her attack on a single statute and the rule interpreting that statute whose possible invalidation can scarcely be expected to disrupt Georgia's entire system of dental regulation." *Eck*, slip op. at 14. The district court also noted that "Georgia's ability to regulate dentists will not be seriously affected if the application of the Dental Practice Act to teeth-whitening services like plaintiff's is found to be unconstitutional," especially given the Board's striking failure to "explain[] how the regulatory system would be disrupted if it is determined that such teeth-whitening services cannot constitutionally be defined as the practice of dentistry." *Id.* Consequently, the court found that there was "no overriding state interest, special state competence, or threat to Georgia's administration of its own affairs that would warrant denying plaintiff access to her chosen federal forum." *Id.*

This Court should reach the same result here. Ms. Collins has raised identical claims to those raised in *Eck*, and a judgment in Ms. Collins's favor would merely restrain the Board from applying the Act to teeth whitening, a practice that is not even mentioned in the text of the law. Declaring the Board's interpretation of the Act unconstitutional as to teeth whiteners would thus have no effect on the state's "comprehensive scheme to regulate the practice of dentistry" beyond teeth whitening. *See* Defs.' Br. 15. Accordingly, because there is "no

10

doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy," *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 (1978), the Board's request that this Court abstain should be rejected.

**B.    *Younger* Abstention.**

Like *Burford* abstention, *Younger* abstention is a narrow exception to the virtually unflagging obligation of a federal district court to exercise its jurisdiction. *Younger* abstention applies only if three factors are met: (1) there must be an ongoing or pending state proceeding; (2) the state proceeding must implicate important state interests; and (3) the state proceeding must provide plaintiff an adequate opportunity to raise her federal constitutional questions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1215–16 (11th Cir. 2002). The Board argues—as it did in *Eck*—that *Younger* abstention is appropriate here because its cease-and-desist order constitutes an "ongoing state proceeding" because the order provides that it "shall remain in effect until such time as [Ms. Collins] is properly licensed with the board, or until further order." Defs.' Br. 16 (quoting the order).

The Board's *Younger* argument must fail because there is no ongoing state proceeding. The text of the cease-and-desist order itself makes this an easy

11

conclusion: It says plainly that "this Order is . . . the *final disposition* of *any proceedings* presently before the Board." Defs.' Mot. to Dismiss, Ex. A at 4 (ECF No. 38-2) (emphasis added). Thus, as the district court noted in *Eck*, "although the Cease and Desist Order remains in effect, any action to enforce the Order would require the institution of 'further proceedings before the board.'" *Eck*, slip op. at 15 (quoting O.C.G.A. § 43-1-20.1(b)). This means that "[u]nless and until such 'further proceedings' are instituted, the Cease and Desist Order represents, as it specifically recites, 'the *final* disposition of any proceedings *presently* before the Board.'" *Id.* (quoting the order). Consequently, "the state proceedings are now at an end." *Id.*

The Board's *Younger* argument also fails for the separate reason that Ms. Collins's Complaint seeks only prospective relief. As the district court noted in *Eck*, "*Younger* does not bar a *wholly prospective* federal action even if the plaintiff failed to exhaust his state appellate remedies on a prior conviction." *Id.* at 16 (quoting *Moore v. City of Asheville*, 396 F.3d 385, 396 (4th Cir. 2005)). This perfectly describes Ms. Collins, who, like the plaintiff in *Eck*, "is seeking wholly prospective relief against future enforcement of an allegedly unconstitutional interpretation of state law." *Id.* at 17. Hence, just as in *Eck*, "*Younger* abstention is not appropriate." *Id.*

12

**IV.    Declaratory and Injunctive Relief Are Available Remedies in Official-Capacity Lawsuit.**

The Board next argues that its members are judicial officers who are immune from § 1983 claims for injunctive relief. Defs.' Br. 17. The Board also claims that declaratory relief is unavailable to Ms. Collins under § 1983 because "the state provided an adequate remedy at law which Plaintiff failed to pursue." *Id.* at 19. But as the district court held in *Eck* with respect to these exact same assertions, neither of these arguments has any merit.

The Board's assertion that its members are entitled to immunity under § 1983 must be rejected because the Board's members have been sued in their official, rather than individual capacities. As the district court recognized in *Eck*, "[e]ven assuming that defendants qualify as 'judicial officers,' the cited provision grants immunity to such officers sued in their individual capacities, *whereas defendants in this action are sued solely in their official capacities*." *Eck*, slip op. at 18 (emphasis added). The Board's reliance on *Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000), is inapposite because *Bolin* "involved a suit brought against federal judges and prosecutors *in their individual capacities*." *Eck*, slip op. at 18–19 (emphasis added) (citing *Bolin*, 225 F.3d at 1238 n.4). Simply put, the Board's assertion of immunity in this case under § 1983 "is without merit." *Id.* at 18.

13

The same goes for the Board's argument that equitable relief is unavailable "because the state provided an adequate remedy at law which Plaintiff failed to pursue." Defs.' Br. 19. As the district court observed in *Eck*, the Board relies entirely on cases "holding that plaintiffs may not obtain equitable relief in *individual capacity suits* challenging judicial officers' rulings in prior actions because the plaintiffs had an adequate legal remedy in the form of an appeal from the rulings." *Eck*, slip op. at 19 (emphasis added). These cases have no application where an action is, instead, "an *official capacity suit* seeking prospective relief against defendants' future application . . . of an allegedly unconstitutional interpretation of state law." *Id.* (emphasis added). As such, the fact that Ms. Collins—like the plaintiff in *Eck*—"had available state judicial remedies in the prior administrative proceedings that she chose not to pursue does not bar her from seeking such relief in this Court." *Id.*

In short, suing state administrative officials in their official capacity is the normal way of seeking prospective injunctive and declaratory relief against state agencies in federal court under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 166–68 & n.14 (1985). The Federal Reporter is filled with such cases. *See, e.g.*, *Rindley*, 929 F.2d 1552 (11th Cir. 1991) (action for declaratory and injunctive relief against Florida Board of Dentistry members in their official capacity); *St.*

14

*Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013) (granting declaratory and injunctive relief against members of state funeral directors board in their official capacity). No case prohibits this Court from issuing prospective injunctive or declaratory relief against the Board, and the Board fails to demonstrate otherwise.

## V.   Ms. Collins's Complaint Alleges Viable Equal-Protection and Due-Process Claims, and Properly Preserves Her Privileges-or-Immunities Claim.

Finally, the Board argues that Ms. Collins's Complaint should be dismissed for failure to state a claim. But, as shown below, Ms. Collins has more than adequately alleged claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment—which is why the district court in *Eck* had no trouble concluding that a substantively identical complaint stated plausible claims for relief. Further, although Ms. Collins's privileges-or-immunities claim is foreclosed by Supreme Court precedent, she properly pled that claim to preserve it for review.

### A.   Equal Protection.

Ms. Collins wishes to provide teeth-whitening services that consist of selling customers an over-the-counter teeth-whitening product, providing a clean, comfortable environment for customers to use that product, and providing customers with guidance on how to apply that product to their own teeth, just as they would at home. Compl. ¶¶ 1, 47, 53. The Board contends these practices

constitute the unlicensed—and, hence, criminal—practice of dentistry. Ms. Collins

has challenged this policy as a violation of the Equal Protection Clause of the

Fourteenth Amendment. In support of this claim, Ms. Collins alleges that:

- Products identical to those sold by her "are available for purchase in supermarkets, drug stores, and online" and that "[i]nstructions for use of those products are widely available, either provided with the products themselves or online." *Id.* ¶ 63.

- Ms. Collins and other teeth whiteners like her "do[] not make diagnoses and do[] not place anything in [their] customers' mouths." *Id.* ¶ 17.

- The risks associated with teeth whitening are minimal. *Id.* ¶ 18.

- "For identical, self-administered products, the risks of teeth whitening are the same whether a person applies the product to her own teeth at home, in a salon, or at a shopping mall." *Id.* ¶ 19.

- There is no rational basis for a "distinction between persons who sell customers a product that they will apply to their own teeth at home . . . and persons who sell customers an identical product that they will apply to their own teeth in a shopping mall or at a salon, whom Georgia considers to be engaged in the practice of dentistry." *Id.* ¶ 67.

Taking these facts as true—as this Court must do at the motion-to-dismiss

stage—Ms. Collins has sufficiently alleged that Georgia law draws an irrational

distinction between those who sell teeth-whitening products for use at home (who

are not considered to be practicing dentistry) and those who sell teeth-whitening

products for use at a shopping mall or salon (who are considered to be practicing

dentistry). And, indeed, the district court in *Eck* concluded exactly that. *See Eck*,

slip op. at 23 (concluding that a substantively identical complaint "state[d] a viable equal protection claim").

In its motion to dismiss, however, the Board essentially repeats the argument that the Court in *Eck* found meritless: that Georgia's prohibition on non-dentist teeth whitening draws a valid distinction between services offered by dentists and services offered by non-dentists. But, as explained in Section 1, below, this argument misconstrues Ms. Collins's claim, which is *not* based on the distinction between dentists and non-dentists. Rather, her claim is based on the distinction between non-dentists who sell teeth-whitening products for self-application at home (who are totally unregulated) and non-dentists who sell teeth-whitening products for self-application at the place of purchase (who are guilty of the criminal unlicensed practice of dentistry). Further, as explained in Section 2, this analysis is not undermined by two recent trial-court decisions from Alabama and Connecticut (both currently on appeal) that found certain teeth-whitening regulations to be constitutional based on a full record at summary judgment. Finally, as explained in Section 3, this Court should reject the Board's plainly improper request to take judicial notice of a variety of contested material outside the pleadings regarding the alleged health risks associated with teeth whitening. Indeed, by making this request the Board has inadvertently demonstrated that this

17

case should be allowed to proceed to discovery, so that the parties can develop the factual record necessary for this Court to resolve Ms. Collins's claims.

### 1. The Board misconstrues Ms. Collins's equal-protection claim.

The Board's principal argument for dismissal of Ms. Collins's equal-protection claim is that Georgia's prohibition on non-dentist teeth whitening appropriately distinguishes "between trained and licensed dentists, on the one hand, and on the other hand untrained and unlicensed individuals who would hold themselves out to the public as capable of providing and in fact provide dental services." Defs.' Br. 24. But as the district court concluded in *Eck*, this argument simply "misconstrues [Ms. Collins's] claim." *Eck*, slip op. at 22.

Ms. Collins does not dispute that there are many services that may only be provided by licensed dentists. But the question in this case is not whether the Board "irrationally discriminates between those who are and those who are not licensed to practice dentistry," but, rather, whether the Board "irrationally discriminates between two classes of non-dentists: those who sell teeth-whitening products for customers to apply to their own teeth at home, who are not regulated under the Dental Practice Act; and those like [Ms. Collins], who sell the same teeth-whitening products for customers to apply to their own teeth in a shopping mall or at a salon, who are considered to be engaged in the practice of dentistry."

18

*Id.* at 22. And, as the court in *Eck* recognized, this distinction raises a plausible equal-protection claim when "[t]he only difference between the two [classes of non-dentists] is where the product is used, which plaintiff contends is not rationally related to the state's legitimate interest in protecting public health." *Id.* at 23. Accordingly, because this case raises the exact same claim under the exact same facts as in *Eck*, the Board's motion to dismiss for failure to state a claim should be denied for the exact same reason.

In an effort to avoid this outcome, the Board has augmented its previous motion to dismiss by asking that the Court take judicial notice of certain language on Ms. Collins's website that states that she is "'highly trained in Cosmetic Teeth Whitening,' refers to the services provided as 'professional teeth whitening,' and further states that the business uses 'state-of-the-art Blue LED technology' as part of the services." Defs.' Br. 22 & n.7. But this request is both improper and irrelevant.

First, to the extent the Board seeks to use these statements to undermine the factual assertions contained in Ms. Collins's Complaint, the request is plainly improper. "The allegations in the complaint *must* be taken as true for purposes of the motion to dismiss." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Further, although district courts have limited authority to take judicial notice of

"matters of public record" at the motion-to-dismiss stage, "a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)). Thus, to the extent the Board seeks judicial notice of language on Ms. Collins's website not to establish the mere existence of this language, but instead to dispute Ms. Collins's factual allegation that the risks associated with her teeth-whitening services are no different from the risks associated with other businesses, like drug stores and supermarkets, that also sell the teeth-whitening products, Compl. ¶ 19, this Court must reject that request.[4]

Further, even if this Court did take judicial notice of these statements, they are irrelevant to the question of whether Ms. Collins is similarly situated to people who sell teeth-whitening products for use at home. Not one of these statements calls into question any of the facts that the district court in *Eck* found sufficient to state a valid equal-protection claim. *See Eck*, slip op. at 22–23 (describing facts

---

[4] Neither of the judicial-notice cases that the Board cites is to the contrary. *See* Defs.' Br. 22 n.7. The case of *O'Toole v. Northrop Grumman Corp*. addresses judicial notice in the context of calculating damages *following a trial*. 499 F.3d 1218,1224–25 (10th Cir. 2007). And the case of *Biro v. Condé Nast* took judicial notice of the existence of publication dates on various online articles to consider the operation of a statute of limitations, consistent with the court's observation that "[i]n the motion to dismiss context, a court should generally take judicial notice to determine what statements [the documents] contain [] . . . *not for the truth of the matters asserted*." 963 F. Supp. 2d 255, 264–65, 269 (S.D.N.Y. 2013) (alterations in original) (internal quotation marks omitted) (emphasis added).

20

and concluding that "[t]hese allegations are sufficient to show that plaintiff and sellers of teeth-whitening products for home use are '*prima facie* identical in all *relevant* respects'" (emphasis added)). Nor do any of these statements call into question Ms. Collins's allegation that "[f]or identical, self-administered products, the risks of teeth whitening are the same whether a person applies the product to her own teeth at home, in a salon, or at a shopping mall." Compl. ¶ 19. Accordingly the Board's motion to dismiss should be denied.

> **2.    The trial-court decisions in *Martinez* and *Westphal* provide no basis for dismissing Ms. Collins's properly pled claims.**

The Board next suggests that this Court may reject Ms. Collins's equal-protection claim because of two recent decisions in which courts rejected due-process and equal-protection challenges to dental-board regulations deeming the provision of teeth-whitening services to be the practice of dentistry: *Martinez v. Mullen*, 11 F. Supp. 3d 149 (D. Conn. 2014) and *Westphal v. Northcutt*, No. 01-cv-2013-901678-EAF, slip op. (Ala. Cir. Ct., Jefferson Cnty. Oct. 3, 2014). But as the Board acknowledges, *see* Defs.' Br. at 26, *both* these cases were decided based on a full evidentiary record at summary judgment—not on motions to dismiss. Indeed, the Alabama Dental Board in *Westphal* actually moved for judgment on the pleadings, which is governed by the same standard as a motion to dismiss, and that motion was summarily denied. *See Westphal v. Northcutt*, No. 01-CV-2013-

21

901678-EAF, slip op. at 1 (Ala. Cir. Ct., Jefferson Cnty. Oct. 1, 2013) (attached as Exhibit 2).

The Board is essentially asking this Court to treat the rational-basis test as a one-way ratchet, under which a single decision anywhere in the nation forecloses courts in other jurisdictions from even *considering* similar constitutional claims. But the rational-basis test requires no such thing, and federal courts applying that test can and do disagree with one another. *Compare, e.g.*, *Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) (holding that Oklahoma's funeral-director monopoly on the sale of caskets was constitutional), *with St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013) (expressly rejecting *Powers* and striking down identical Louisiana casket-sale monopoly). Moreover, it would be particularly inappropriate to give this dispositive effect to *Martinez* and *Westphal*, both of which are currently on appeal. Finally, to the extent the Board is asking this Court to give conclusive effect to the factual findings in either *Martinez* or *Westphal*, that request is plainly foreclosed by Eleventh Circuit precedent. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (holding that "a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation").

Simply put, Ms. Collins must be given the opportunity to build an evidentiary record to support her claims. Indeed, under the rational-basis test, evidentiary development is critical. After discovery it often becomes clear whether an asserted interest in protecting public health and safety is really just a smokescreen for economic protectionism—an illegitimate use of government power even under the rational-basis test. *See, e.g.*, *St. Joseph Abbey*, 712 F.3d at 226 (finding no rational basis for casket-sales ban); *Merrifield v. Lockyer*, 547 F.3d 978, 991–92 & n.16 (9th Cir. 2008) (finding no rational basis beyond protectionism for pest-control rules); *Craigmiles v. Giles*, 312 F.3d 220, 224, 228–29 (6th Cir. 2002) (finding no rational basis for casket-sales ban); *Cornwell v. Cal. Bd. of Barbering & Cosmetology*, 962 F. Supp. 1260, 1273–74 (S.D. Cal. 1997) (refusing to dismiss rational-basis challenge to regulations that prohibited the provision of hair-braiding services without a cosmetology license). Accordingly, the Board's motion to dismiss should be denied.

### 3.   The Board's request that this Court take judicial notice of facts outside the Complaint is improper, and the alleged facts are irrelevant.

Finally, rather than allow for Ms. Collins's claims to be resolved on the basis of facts developed through discovery, the Board asks this Court to take judicial notice of a variety of material produced by non-parties that the Board contends

demonstrates that Ms. Collins cannot possibly satisfy her burden under rational-basis scrutiny. These include a declaratory ruling on teeth whitening by the Connecticut State Dental Commission (challenged in *Martinez*), a "position statement" on teeth whitening by the Iowa Dental Board, and a 2007 European Commission opinion on consumer use of hydrogen peroxide in teeth-whitening products. *See* Defs.' Br. 5 n.2, 25 n.9; *see also* Defs.' Mot. to Dismiss, Exs. C, D, & F. The Board argues that taking judicial notice of this material is appropriate because the Board does not cite this material as "evidence," but rather as material that serves to "identify several conceivable basis [*sic*] that would support the Board's regulation" (i.e., that "there are health risks attendant to the provision of tooth whitening services"). Defs.' Br. 26–27. But like the Board's request that this Court take judicial notice of statements on Ms. Collins's website that allegedly demonstrate that she is not similarly situated to people who sell teeth-whitening products for use at home, this request is improper and these alleged facts are irrelevant.

The request is improper because it is inappropriate at any stage of litigation—much less at the motion-to-dismiss stage—for judicial notice to be taken of facts that are reasonably in dispute. *See, e.g.*, *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). The scope of permissible judicial notice certainly does

not encompass disputable medical conclusions contained in statements released by state agencies or foreign governments. *See, e.g.*, *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347–48 (5th Cir. 1982) (holding that the "proposition that asbestos causes cancer" was not subject to judicial notice, and stating that "judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities"). Thus, it is not surprising that the Board cites no authority for the view that a court may resolve such a dispute at the pleadings stage.[5]

In any event, the Board's request for judicial notice is also irrelevant. Indeed, the material cited by the Board merely begs the question raised by Ms. Collins's equal-protection claim: whether it is rational for the Board to treat Ms. Collins differently from sellers of teeth-whitening products for home use *when the minimal health risks in both circumstances are identical*. Hence, while the European Commission may believe that teeth-whitening products with over 6% hydrogen peroxide are "not considered safe for use by consumers," Defs.' Mot. to Dismiss, Ex. F (ECF No. 38-7), the Board does not dispute that it is perfectly legal for Georgians to buy teeth-whitening products in any commercially available

---

[5] This Court should further observe that with the exception of the Cease and Desist Order (Defs.' Mot. to Dismiss, Ex. A (ECF No. 38-2)), none of the Board's exhibits are referenced in Ms. Collins's Complaint.

concentration, nor does the Board suggest that products with concentrations above 6% become more or less dangerous based on the identity of the person selling them or the geographical location at which they are used. The same goes for the risks of teeth whitening alleged in the Connecticut Declaratory Ruling and the Iowa position statement. Again, not one of these statements calls into question any of the facts that the district court in *Eck* found sufficient to state a valid equal-protection claim. *See Eck*, slip op. at 22–23. Accordingly the Board's motion to dismiss should be denied.

### B. Due Process.

Besides violating Ms. Collins's rights under the Equal Protection Clause, Ms. Collins has alleged that Georgia's prohibition on her teeth-whitening services violates her due-process rights because there is no rational basis for requiring non-dentist teeth whiteners like her to become licensed dentists in order to offer teeth-whitening services. The Supreme Court has recognized a due-process right to earn a living free from arbitrary or unreasonable government regulations. *See, e.g.*, *Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (affirming the "due process right to choose one's field of private employment" subject to reasonable regulation).

26

Ms. Collins's due-process claim is supported by the same facts that support her equal-protection claim, listed on page 16 above. In addition to those facts, Ms. Collins has also alleged that:

- The Act and related regulations subject her to serious penalties for offering teeth-whitening services. Compl. ¶ 24.

- The only way to avoid those penalties is to pursue years of burdensome training at enormous expense. *Id.* ¶¶ 25–27.

- The required training is not even germane to the government's asserted interest in health and safety, because the Board does not require dentists to have any experience or demonstrated proficiency with regard to teeth whitening. *Id.* ¶¶ 33–36.

Taking these facts as true—as this Court must do at the motion-to-dismiss stage—Ms. Collins has sufficiently alleged that Georgia law imposes irrational burdens on teeth-whitening entrepreneurs like herself. Simply put, it is not rational to require a person to have eight years of higher education—none of which actually teaches teeth whitening—before one may offer teeth-whitening services. Indeed, federal courts have invalidated educational requirements under far less burdensome licensing regimes. *See Craigmiles*, 312 F.3d at 224–25 (concluding that it was unconstitutionally irrational to require casket resellers to "dedicat[e] two years and thousands of dollars" to funeral-director training when they performed none of the functions of funeral directors beyond selling caskets); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1109, 1118–19 (S.D. Cal. 1999) (reaching the same conclusion in a hair-

braiding case involving 1,600 hours of cosmetology training, only 110 of which were even arguably applicable to promoting health and safety in hair braiding).

The Board, for its part, argues that Ms. Collins fails to state a valid due-process claim because the right she has asserted is not "fundamental." Defs.' Br. 28. The Board seems to assume that, since Ms. Collins's challenge to regulations violating her right to earn a living is subject to rational-basis review by this Court, her claim *must* fail. *See id.* But that is wrong for the same reasons explained in the preceding discussion of Ms. Collins's equal-protection claim. See *supra* at 15–26. Plaintiffs like Ms. Collins can and do prevail in rational-basis cases—and they do so under facts similar to those Ms. Collins has alleged in this case. *See, e.g.*, *St. Joseph Abbey*, 712 F.3d at 226; *Cornwell*, 80 F. Supp. 2d at 1118–19.[6]

---

[6]The Board's apparent belief that rational-basis review is a rubber stamp is impossible to square with the fact that plaintiffs have prevailed in at least 20 of 126 rational-basis cases before the Supreme Court since 1970, a result that would be impossible if the government's invocation of magic words, such as a stated goal of regulating in the interest of "public health," were enough to merit dismissal. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003); *United States v. Morrison*, 529 U.S. 598, 614–15 (2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000); *Romer v. Evans*, 517 U.S. 620, 634–35 (1996); *United States v. Lopez*, 514 U.S. 549, 567 (1995); *Quinn v. Millsap*, 491 U.S. 95, 108 (1989); *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985); *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 623 (1985); *Williams v. Vermont*, 472 U.S. 14, 24–25 (1985); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985); *Plyler v. Doe*, 457 U.S. 202, 230 (1982); *Zobel v. Williams*, 457 U.S. 55, 64 (1982); *Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977); *U.S. Dep't of Agric. v.*

Accordingly, the district court in *Eck* had no trouble concluding, based on a substnatively identical set of allegations, that the plaintiff "stat[ed] a viable substantive due process claim" where the "plaintiff's complaint adequately allege[d] that requiring those who sell teeth-whitening products for use in a commercial setting, rather than at home, to have a license to practice dentistry is not rationally related to any legitimate state purpose." *Eck*, slip. op. at 24–25. This Court should conclude the same here.

### C.    Privileges or Immunities.

Finally, the Board argues that Ms. Collins fails to state a privileges-or-immunities claim either because her claim is based on the same "right to earn an honest living" that forms the basis of her due process claim or because there is "no federal constitutional right concerning one's occupation." Defs.' Br. 29. This is the Board's only meritorious argument: Ms. Collins concedes that the Supreme Court's decision in the *Slaughter-House Cases* forecloses this claim, as that decision essentially rendered the Privileges or Immunities Clause "a vain and idle enactment." 83 U.S. 36, 96 (1872) (Field, J., dissenting). But at least one Supreme Court Justice has expressed an interest in revisiting the Privileges or Immunities

*Moreno*, 413 U.S. 528, 534 (1973); *James v. Strange*, 407 U.S. 128, 141–42 (1972); *Lindsey v. Normet*, 405 U.S. 56, 77–78 (1972); *Mayer v. City of Chicago*, 404 U.S. 189, 196 (1971); *Reed v. Reed*, 404 U.S. 71, 76–77 (1971); *Turner v. Fouche*, 396 U.S. 346, 363–64 (1970).

Clause "in an appropriate case," *Saenz v. Roe*, 526 U.S. 489, 527–28 (1999) (Thomas, J., dissenting), and "many scholars have argued for overruling the *Slaughter–House Cases* in toto." *Merrifield v. Lockyer*, 547 F.3d 978, 984 (9th Cir. 2008). Ms. Collins has thus pled this claim in order to preserve it for future appellate review, in the hopes that the Privileges or Immunities Clause may one day be revived.

## CONCLUSION

For the foregoing reasons, the Board's motion to dismiss should be denied except as to Ms. Collins's privileges-or-immunities claim.

Dated February 26, 2015.

Respectfully submitted,

/s/ Paul Sherman

Paul Sherman*
Mahesha Subbaraman*
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org;
msubbaraman@ij.org
* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

/s/ Yasha Heidari

Yasha Heidari (GA Bar No. 110325)
Heidari Power Law Group, LLC
P.O. Box 79217
Atlanta, GA 30357
Tel: (404) 939-2742
Fax: (404) 601-7852
Email: yasha@hplawgroup.com

*Local Counsel for Plaintiff*

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D</u>

I certify that the foregoing Brief conforms to the requirements of L.R. 5.1C.

The Brief is prepared in 14 point Times New Roman font.

<u>/s/ Paul Sherman</u>

Institute for Justice

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this February 26, 2015, a true and correct

copy of the **PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS** was served with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such

filing to the following counsel of record:

ROGER A. CHALMERS
Assistant Attorney General
State Law Department
40 Capitol Square SW
Atlanta, GA 30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

I further certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants: NONE.

<u>/s/ Paul Sherman</u>

Institute for Justice

*Counsel for Plaintiff*