# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CHRISTINA COLLINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. |
| | )    1:14-CV-03824-LMM |
| TANJA D. BATTLE, in her official | ) |
| capacity as Executive Director of the | ) |
| Georgia Board of Dentistry, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, through counsel, Samuel S. Olens, Attorney General for the State of Georgia, submit this reply in support of their Motion to Dismiss.

Plaintiff's argument is not trued up to the allegations of her complaint. The complaint does not describe Plaintiff's business as one that sells tooth whitening **products**. Instead it makes clear that she provided and wants to continue providing tooth whitening **services**. Yet for purposes of analyzing her equal protection and due process claims Plaintiff asks the Court to compare her business to a drug store or an online merchant that only sells a product. The argument offered is that she should be allowed to provide tooth whitening services simply because anyone (herself included) can sell tooth whitening products. By this reasoning all drug store owners should be allowed to

practice medicine since they can sell medicines and medical products.  On its face we know this reasoning is faulty and fails under rational basis inquiry because the suggested "comparators" are not similar in all relevant respects.

This case points up an obligation of the Federal courts that is equal in importance to the duty to say when State law or action violates the Constitution: the obligation not to interfere with State regulation for protecting the public health when there is a rational basis to support the regulation.  And it also points up the important obligation under Rules 8 and 12 to stop cases in their tracks when it is clear that they promise no return. Plaintiff's response calls Defendants' motion a kitchen sink approach that must fail under the ruling by Judge Shoob in *Eck*.[1]  This lawsuit must fail for principally one reason but the reason finds support in multiple theories: the States, which are sovereign, can regulate industries and professions to protect the public health, subject only to the limitation that there be a rational basis -- any conceivable basis -- to support their regulation.  Here the Court should not interfere with Georgia's efforts to protect the public health because there is not only a conceivable basis, but as shown several concrete, demonstrated,

---

[1] Defendants acknowledge that their arguments are identical to those that Judge Shoob rejected at the pleadings stage in *Eck*.  However, it is settled law that the ruling is not binding on this Court.  *See Camreta v. Greene*, 131 S. Ct. 2020, 2036 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore *et al.*, Moore's Federal Practice § 134.02[1] [d], p. 134-26 (3d ed. 2011)), cited in *Green Party of Ga. v. Georgia*, 2013 U.S. Dist. LEXIS 38887, *6 (N.D. Ga. Mar. 20, 2013) (Story, J.).

existing rational basis to support the State's regulatory action.  By the same token, by the express limitations on relief for judicial action under section 1983, and also under important principles of abstention, Plaintiff should not be allowed to bypass the available State processes for resolving the important policy question of whether the provisioning of tooth whitening services is the practice of dentistry, nor should this Court be the final arbiter of what constitutes the practice of dentistry which is a function at the heart of the State's ability to regulate for the public health.

Just as the response fails to address head on the fact that this case involves services not products, so it also fails to acknowledge the import of the burden of proof in rational basis analysis which is to negate every conceivable basis for the State's regulation.  The response argues that the materials attached to the motion are "not relevant" but this is an attempt to side-step the problem presented by this high burden of proof.  This simple illustration shows why Plaintiff's claims must fail: Study A, which the complaint suggests will be offered, says that tooth whitening is mostly safe.  Study B, which Defendants' motion shows to exist, says that tooth whitening involves significant health risks.  The premise of this lawsuit is that this Court can weigh the evidence and decide which study is right.  But rational basis review does not permit this Court to weigh such evidence and to make the finding which is suggested by the complaint that one study or one expert witness is more persuasive than another.  This is why Defendants attached the

various materials to their motion.  The existence of these materials (scientific studies, as well as administrative rulings and also judicial decisions that are based on such studies, recognizing health risks in tooth whitening) is incontrovertible and Plaintiff makes no argument to the contrary.  And it is the existence of the materials that is controlling while their weight is irrelevant.  If Defendants do no more after discovery than present these same materials as attachments to a motion for summary judgment -- even if unauthenticated -- then Plaintiff's claims must fail.  The experience of *Martinez* and *Westphal* shows that this is true.  This is so because when there is even a conceivable health risk the regulation stands.

At most Plaintiff can try to counter the existing basis for regulating in this area but this will never be sufficient because her burden is to negate every conceivable rational basis.  Because she cannot do this her claims must fail.

### A. *Burford* And *Younger* Abstention Are Proper In This Case[2]

This case presents a compelling basis for *Burford* abstention.  The Supreme Court has summarized *Burford* abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when

---

[2] Defendants agree that *Narey v. Dean*, 32 F.3d 1521 (11th Cir. 1994) and *Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir. 1987) foreclose the *Rooker-Feldman* and *res judicata* defenses in this Court.  Defendants' motion should have cited these cases but by oversight it did not.  Defendants do not waive but reserve these defenses.

> there are "difficult questions of state law bearing on policy
> problems of substantial public import whose importance
> transcends the result in the case then at bar"; or (2) where the
> "exercise of federal review of the question in a case and in
> similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public
> concern."

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361

(1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814

(1976)).  The doctrine arose from cases where Federal constitutional claims were asserted

against the backdrop of complex State regulatory action involving important questions of

State policy in areas of public concern.  As examples, in *Burford* the doctrine was applied

to "a Fourteenth Amendment challenge to the reasonableness of the Texas Railroad

Commission's grant of an oil drilling permit."  *See id.*  In *Ala. Pub. Serv. Comm'n v.

Southern R. Co.*, 341 U.S. 341 (1951), the doctrine was applied "where a railroad sought

to enjoin enforcement of an order of the Alabama Public Service Commission refusing

permission to discontinue unprofitable rail lines."  *See id.*  In each case the Federal court

was called upon to address difficult questions of State law or policy, whereas the State

review processes allowed the State courts to develop expertise in the regulatory area.  *Id.*

In such cases, the "unified nature" of the State regulatory and review processes allows for

more coherent policymaking with respect to the important matters in issue.  *Id.*

These same considerations exist here.  As previously detailed, Georgia has a comprehensive scheme for regulating the practice of dentistry.  The Dental Practice Act includes provisions that define the practice of dentistry, delineate the acts which constitute the practice of dentistry, provide for licensing and licensing review procedures, and provide a mechanism for prohibiting the unlicensed practice of dentistry within the State.  *See* O.C.G.A. §§ 43-11-1, *et seq.*  The Board is created as part of the Act, and is authorized, *inter alia*, to adopt rules and regulations pertaining to the practice of dentistry, and to initiate investigations, conduct hearings and issue cease and desist orders to stop the unlicensed practice of dentistry.  *See* O.C.G.A. § 43-11-7.  This comprehensive scheme was created for the expressly stated purpose of protecting the "public health, safety, and welfare."  *See* O.C.G.A. § 43-11-2(e).

With respect to the available State administrative hearing and judicial review processes, under the Georgia APA hearings are before the Board (which is uniquely qualified to address matters such as what constitutes the practice of dentistry as its members are licensed and trained in dentistry) or before another person "qualified by reason of training, experience, and competence."  O.C.G.A. 50-13-13(a)(5).  Georgia law expressly allows constitutional challenges to actions taken by the Board, *see* O.C.G.A. § 50-13-19(h)(1); and it also provides for a full evidentiary hearing on contested matters followed by judicial review of the Board's actions in the Georgia trial and appellate

courts.  *See* O.C.G.A. §§ 50-13-13, 50-13-19, 50-13-20.  Initial judicial review lies generally in Fulton County Superior Court.  *See* O.C.G.A. 50-13-19(b).  And, as a further indication of the importance of the regulatory area, the Georgia APA expressly provides for the continued protection of the public health and welfare during judicial review in matters involving the practice of medicine or dentistry.  *See* O.C.G.A. § 50-13-20.[3]

Against this backdrop Plaintiff's claims call upon this Court to define what constitutes the practice of dentistry in Georgia, and specifically to decide that tooth whitening services are not the practice of dentistry and to "restrain the Board from applying the Act to teeth whitening."  (Doc. 41 at 10).  But defining the practice of dentistry and delineating which acts constitute the practice of dentistry are core functions under the Act.  Plaintiff's response argues Federal appellate courts routinely decline to apply *Burford* abstention in similar cases.  But the two cases cited are distinguishable as neither case asked the Federal court to make policy determinations that were the very function and purpose of the State regulatory systems in issue.

The response first cites *BT Inv. Managers v. Lewis*, 559 F.2d 950 (5th Cir. 1977). In that former Fifth Circuit case a New York firm brought a Federal due process and

---

[3] The statute provides: "In contested cases involving a license to practice medicine or a license to practice dentistry in this state, the filing of an application for appeal or a notice of appeal shall not by itself stay enforcement of the agency decision.  In such cases, the superior court which considered the petition for judicial review or the Court of Appeals or the Supreme Court may order a stay only if such court makes a finding that the public health, safety, and welfare will not be harmed by the issuance of the stay."

equal protection challenge to a Florida statute, enacted while the firm was applying to do business in the state, which barred out-of-state competition in the area of investment counseling.  559 F.2d at 952-953.  The statute had no provisions that were related to the qualifications of the out-of-state companies; instead, it was noted that the plain purpose of the statute was to "rid Florida banking and trust interests of non-Florida competition in the area of investment counseling."  *Id.* at 954.  In this context the Fifth Circuit held that *Burford* abstention was not required because invalidation of the statute would not disrupt Florida's system of banking regulation.  *Id.* at 955.

*BT Inv. Managers* is distinguishable because the case involved a plain violation of Federal law and resolution of the constitutional questions there would involve no inquiry into the substantive policy areas of the Florida Banking Code.  *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 362-363.  But the Fifth Circuit made clear that in a proper case involving "state regulatory matters such as regulation of natural resources, education, or eminent domain, where a paramount state interest is apparent," then *Burford* abstention is proper.  559 F.2d at 955.  Like the examples given in *BT Inv. Managers*, there is no question that the State's power to regulate to protect the health of its citizens is a paramount State interest. *See Sporhase v. Neb. ex rel. Douglas*, 458 U.S. 941, 956 (1982).

The response also relies on *Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991). Without discussing the particulars of the case the response states that *Rindley* "involved a

constitutional challenge to a Florida Board of Dentistry policy." *Rindley* is not like this case. There an "advertising dentist" claimed "non-advertising dentists" conspired with the Florida Department of Professional Regulation to "implement a policy of selective enforcement of the disciplinary statutes regulating the practice of dentistry against those dentists who engage in commercial advertising." 929 F.2d at 1553. The case raised no question concerning the constitutionality of any substantive part of the State regime, and in particular it did not ask the Federal court to say what did or what did not constitute the practice of dentistry. *See id.* at 1555 (stating "Rindley does not question the constitutionality of Florida's statutes, but rather their selective enforcement"). The Eleventh Circuit held *Burford* abstention was not appropriate because Florida's ability to regulate dental professionals would not be seriously affected by a determination that its selective enforcement procedures were unconstitutional. *See id.* at 1556-1557.

Unlike *Rindley*, Plaintiff asks this Court to define the practice of dentistry – a function that should be left to the State and the democratic process – in such a way as to permit admittedly untrained and non-licensed individuals to provide dental services to citizens of the State. This case impacts public health policy whereas *Rindley* did not. That tooth whitening is not mentioned in the text of the Act is immaterial. The same can be said of the terms "root canal" and "bridge" and "extraction" whereas no one would seriously contend the Board cannot act in respect of such services. The State legislature

created the Board for the purpose of interpreting and giving meaning to the law and

applying it to real world "procedures, operations, or services."  *See* O.C.G.A. § 43-11-17.

In this context *Rindley* supports abstention:

> Burford abstention is appropriate when 'exercise of federal
> review of the question in a case and in similar cases would be
> disruptive of state efforts to establish a coherent policy with
> respect to a matter of substantial public concern.'

*Rindley*, 929 F.2d at 1556 (citing *Burford* and *Colo. River*).  The definition of "dentistry"

and the "practice of dentistry" under Georgia law should not be developed and

determined on an *ad hoc* case-by-case basis in the Federal courts.[4]  *Burford* abstention is

proper in this case.

Regarding *Younger* abstention, the response argues that there is no ongoing State

proceeding.  But again the Cease and Desist Order plainly states that it shall "remain in

---

[4] The response assertion that Defendants do not show how the regulatory system would
be disrupted rings hollow.  *Burford* abstention is concerned with Federal courts getting
involved in State policy making, and so it applies when "exercise of federal review of the
question in a case *and in similar cases*" would be disruptive of State policy making
efforts.  *New Orleans Pub. Serv., Inc.*, 491 U.S. at 361 (emphasis added).  Exercise of
jurisdiction in this kind of case would "transform the district court into a source of
appellate review" of all Board decisions regarding what constitutes the practice of
dentistry (not only tooth whitening) and so it would be disruptive in the way that *Burford*
is designed to address.  *See Southern R. Co. v. State Bd. of Equalization*, 715 F.2d 522,
528-529 (11th Cir. Ga. 1983) (citing *Fair Assessment in Real Estate Assoc. v. McNary*,
454 U.S. 100, 114 (1981)).  Exercise of jurisdiction in cases of this kind also will
interfere in the regulatory process because "procedures, operations or services" can
change over time and the State regulatory process is designed to address such changes.
(Doc. 1-1) (stating Board position with respect to "current whitening techniques").

effect until such time as [Plaintiff] is properly licensed with the Board, or until further order."  (Doc. 38-2).  Clearly the restriction is continuing in nature or else Plaintiff would have no basis for an action under *Ex Parte Young*.  Moreover, as a practical matter, Georgia law requires initiation of further proceedings to address violations of the Order.  *See* O.C.G.A. § 43-1-20.1 ("[t]he violation of any cease and desist order ... shall subject the person violating the order to further proceedings before the board").  Finally, the ongoing proceeding requirement is not rigid and *Younger* abstention is proper when the suit seeks an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future" State proceedings.  *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) (internal citations omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499-502 (1974)).[5]

---

[5] The response suggests *Younger* abstention is not appropriate because this case seeks "wholly prospective" relief.  But the cited case actually holds that *Younger* abstention is proper when a case seeks to annul the effects of prior administrative proceedings.  *See Moore v. City of Asheville*, 396 F.3d 385, 396 (4th Cir. 2005); *see also id.* at 394-395 ("We continue to focus on *Younger's* policy of commanding federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding.").  A distinction is made for cases that only look forward, such as where a plaintiff is convicted, completes his sentence, and then later challenges the underlying statute but does not seek to annul any collateral effects of the conviction.  *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977).  But that is not this case because Plaintiff remains under the restrictions of the Voluntary Cease and Desist Order and the relief that she seeks will have such an annulment effect.  Plaintiff specifically pleads that she temporarily has closed her business and plans to reopen immediately if she obtains a ruling that allows her to do so.  (Doc. 1 at 14-15).  Clearly she seeks to annul the collateral effects of the Board's action.

**B. Plaintiff Is Not Entitled To Injunctive Or Declaratory Relief**

The response argues that declaratory and injunctive relief is available in official capacity suits and also that judicial immunity does not apply to claims for injunctive relief in a section 1983 action. These arguments do not address the basis for Defendants' motion which is the *statutory* limitation on injunctive relief. As amended after *Pulliam v. Allen*, 466 U.S. 522 (1984), section 1983 now forecloses injunctive relief for "judicial" acts. *See* 42 U.S.C. § 1983 (stating "injunctive relief" is not available "for an act or omission taken in such officer's judicial capacity …."). This case seeks to overturn and enjoin the operation of the Board's Cease and Desist Order that was clearly entered in its judicial capacity. The statute squarely forecloses such relief.[6]

**C. The Complaint Fails To State Equal Protection And Due Process Claims[7]**

The response fails to address the central shortcoming of the equal protection and due process claims in this case: that is, that Plaintiff and her tooth whitening business are not treated differently at all and instead the same restrictions that apply to all persons who would provide dental *services* in Georgia have been applied to her business which admittedly provides dental *services*.

---

[6] By its terms section 1983 would allow injunctive relief only if "a declaratory decree was violated or declaratory relief was unavailable" and there is no such allegation here.

[7] The response concedes Count III fails to state a privileges and immunities clause claim and should be dismissed.

Plaintiff insists on likening her situation to the mere sale of tooth whitening products.  But again the complaint makes clear that Plaintiff does not only sell a product but provides services.  The services include supervision and instruction on the application of tooth whitening products to a client's teeth.  The services are provided in Plaintiff's retail business space, in a chair that she provides for the application process, using an enhancing light that she provides also as part of the services.[8]  Moreover, in a statement from her own website which this Court may take judicial notice of because it is not reasonably subject to dispute,[9] Plaintiff holds herself out to the public as an expert or "professional" in this area and she refers to the services that her business provides as "professional teeth whitening."  (Doc. 38-3).  Plaintiff does not merely sell a product.

The response stresses the words "products" and "self-application" and ignores the fact that Plaintiff provides services as if the services are inconsequential in the analysis.  But the services are key.  As noted in *Westphal*, another case directly on point rejected

---

[8] While the response attempts to downplay the referenced fact assertions in the complaint, as it must it acknowledges that Plaintiff provided and wants to continue providing tooth whitening services.  (Doc. 41 at 15).

[9] *See Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1273-1274 (11th Cir. 2014); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *and see generally Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224-1225 (10th Cir. 2007); *Biro v. Conde-Nast*, 963 F. Supp.2d 255, 265 (S.D.N.Y. 2013).

the argument that in-store application by "supervision and instruction" is not a "service" in the area of tooth whitening.  *See White Smile, USA, Inc. v. Bd. of Dental Examiners*, 36 So.3d 9, 14 (Ala. 2009).  The reasoning in *WhiteSmile* is instructive because the argument there was identical to the argument in Plaintiff's response:

> The commonly accepted definition of the word "dental" is "of or relating to the teeth or dentistry." *Merriam-Webster's Collegiate Dictionary* 333 (11th ed. 2003). The commonly accepted definition of the word "service" is "the act of serving: as *a*: a helpful act [or] *b*: useful labor that does not produce a tangible commodity." *Merriam-Webster's Collegiate Dictionary* 333 (11th ed. 2003). The commonly accepted definition of "dental service" is, therefore, a helpful act or useful labor of or relating to the teeth.
>
> . . .
>
> Considering the undisputed facts, it is apparent that customers who purchase LightWhite at Randall's receive more than just the product itself. Although the LightWhite teeth-whitening process is largely self-administered by the customer, D'Markos offers the customer assistance in that its employees are present with the customer throughout the process.  D'Markos employees instruct the customer in the proper application of the product; they answer questions, presumably with some knowledge; and they handle many of the materials used in the process while wearing protective gloves. Accordingly, D'Markos sells not only the product, but also the helpful acts and useful labor of its employees that relate to the customer's teeth-whitening experience. Therefore, the sale of Lightwhite with in-store application as performed at Randall's is a dental service within the meaning of § 34-9-6. Consequently, it is the practice of dentistry within the meaning of that section.

*Id.* at 13-14.

Because Plaintiff does not merely sell a product, she is not similarly situated to "those who sell teeth-whitening products for use at home" and her equal protection claim fails. *See Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002) ("The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner."); *see also Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006) (noting "different treatment of dissimilarly situated persons does not violate the equal protection clause"). Again in equal protection analysis comparators must be similarly situated in all relevant respects. *See Campbell*, 434 F.3d at 1314*; accord Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202-03 (11th Cir. 2007). There is no merit to the assertion in the response that those who merely purchase (or sell) tooth whitening products for home application are similarly situated to Plaintiff, where by her own pleading Plaintiff and her business provide tooth whitening services over and above the mere purchase, sale or self-application of such products.[10]

---

[10] There is another basic problem with the focus on products. The Dental Practice Act does not regulate products and instead regulates "procedures, operations, or services." *See* O.C.G.A. § 43-11-17. It is settled that the States may regulate incrementally to address perceived health problems. *See, e.g., United States Baseball v. City of New York*, 509 F. Supp. 285, 292-293 (S.D.N.Y. 2007) (citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 316 (1993) (stating "the legislature must be allowed leeway to approach a perceived problem incrementally")). That Georgia restricts services and not products therefore is not in any manner unlawful.

Because this case is about services, not product sales, it is appropriate to focus the rational basis inquiry on risks attendant to the provisioning of tooth whitening services. Again any conceivable basis will support the Board's actions. Here there is not only a conceivable basis, but as shown several concrete, demonstrated, existing rational basis to support the State's regulatory action. These include the following:

- There are contraindications to tooth whitening; and, unlike dentists, persons who are not licensed to practice dentistry are not trained to identify any of the various conditions that can amount to such contraindications.[11] Plaintiff's complaint and website make clear that these contraindications exist but still she provides tooth whitening services without first making (and, by virtue of her lack of training, without being able to make) a proper diagnosis.[12]

- The products that are used in commercial tooth whitening are capable of harming the patient (including by burning tissue); indeed, at levels far lower than those that are used by Plaintiff they have been found to be "not safe" for consumers. And the same study finds that the risks of harm can be limited when tooth whitening products are applied under the supervision of a dentist.[13]

---

[11] Doc. 38-4 at pp. 4, 7; Doc. 38-5 at pp. 2-3; Doc. 38-6 at pp. 6, 12.

[12] Doc. 1, ¶¶ 17, 53; Doc. 38-3 at p. 9.

[13] Doc. 38-7; *see also* Doc. 38-4 at p. 4.

- There are sanitation and infection control risks when dental services are provided to members of the public.  Unlike non-dentists, Georgia licensed dentists are subject to guidelines published by the Centers for Disease Control for infection control in dental health care settings.  *See* Ga. Comp. R. & Regs., r. 150-8-.01(a).[14]

- There are health risks associated with the LED lights used in tooth whitening.[15]

The response takes issue with the attachments to the motion recognizing these health risks in tooth whitening.  However, it is settled that the Court may take judicial notice of this material in deciding a Rule 12(b)(6) motion because its existence (and as to Plaintiff's own website even its content) is not reasonably subject to dispute.  *See supra note* 8.  The response appears to concede at least that the Court can take judicial notice that these materials exist and that is the point of submitting them.  The existence of these materials is incontrovertible and Plaintiff makes no argument to the contrary.  And it is the existence of the materials that is controlling while their weight is irrelevant.

The premise of this lawsuit, and the central premise of the response including its objections to the attached material, is that the Court should allow discovery on the risks

---

[14] Again the guidelines, which are available at http://www.cdc.gov/mmwr/PDF/rr/rr5217.pdf, state in relevant part that they are "designed to prevent or reduce potential for disease transmission from patient to [provider], from [provider] to patient, and from patient to patient."  *See id.* at p. 2.

[15] Doc. 38-4 at p. 5.  *See also Martinez v. Mullen*, 11 F. Supp.3d 149, 160-168 (D. Conn. 2014).  As *Martinez* shows, any one of these risks standing alone bars Plaintiff's claims.

of tooth whitening and then it should weigh all of the evidence gathered and decide which studies or which expert witness is right.  But rational basis review does not permit this Court to weigh such evidence and to make the finding which is suggested by the complaint that one study or one expert witness is more persuasive than another.  In rational basis analysis it is immaterial whether Plaintiff might offer competing technical or scientific evidence to minimize the identified risks.  As noted in *Martinez*, it does not matter whether the risks are scientifically proven or even without dispute.  11 F. Supp.3d at 159-160.  Rather, the State can be proactive and can regulate conduct in order to protect the public from harm even where there is competing or inconclusive evidence on the subject matter of the regulation.  *See id.* at 164-165.

*Martinez* and *Westphal* show that this is true.  At most in this case Plaintiff can try to counter the existing basis for regulating in this area -- just as in *Martinez* and *Westphal* -- but this will never be sufficient because her burden is not merely to counter but to negate every conceivable rational basis.  *See Beach Communications, Inc.*, 508 U.S. at 314-315.  Because she cannot do this her claims must fail.

In sum, Plaintiff's response fails to show that the restriction at issue is not rationally related to Georgia's interest in protecting the public health, a legitimate interest which is at the core of the State's police power.  And this case is not about product sales.  Rather, Georgia has determined that the unlicensed practice of dentistry is "a menace and

a nuisance dangerous to the public health," O.C.G.A. § 43-11-2(e), and enacted a statutory scheme to define and regulate the practice of dentistry.  To this end the Act speaks in terms of dental services, including services provided for the purpose of changing the appearance or shade of teeth, and it seeks to ensure that dental services are provided by persons who are trained and licensed to provide such services.  *See* O.C.G.A. § 43-11-1(6) (defining "dentistry" as "evaluation, diagnosis, prevention, or treatment ..."); O.C.G.A. § 43-11-17(6) (defining the practice of dentistry as including "any person who performs any of the following procedures, operations, or services …").  The State rationally could determine that the public health is best served by requiring that dental services be provided by persons who are trained and licensed to provide such services.  Plaintiff's business is one that provides dental services but she is not trained or licensed as a dentist and she is not similarly situated to such persons.

As a final note, Plaintiff's response suggests that if she does not prevail then no claim can survive rational basis review on a Rule 12 motion.  But that is an overstatement as both *Rindley* and *BT Inv. Managers* attest.  Here, by her own complaint, Plaintiff acknowledges that tooth whitening involves health risk, although by artful pleading she presents only her view that the risks are "minimal."  In this way she attempts to obscure the simple and incontrovertible fact that there is science on both sides of the issue that

this case concerns.  In such cases it is improper for the Federal courts to step in and replace the States in legislating for the public health.

There is no impermissible classification at work here.  Plaintiff and her business have not been subjected to unequal treatment and instead are subject to the same restrictions on the practice of dentistry as apply to all persons in Georgia.  The restrictions rationally further the important State interest of protecting the public health. Count I fails to state an equal protection claim, and because Plaintiff concedes that the same rational basis test applies to her due process claim, Count II also fails.

Defendants ask that the Court dismiss the complaint and all claims in this action.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

DEVON ORLAND          554301
Senior Assistant Attorney General

PLEASE ADDRESS ALL          s/ Roger A. Chalmers          118720
COMMUNICATIONS TO:          ROGER A. CHALMERS
Roger A. Chalmers          Assistant Attorney General
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D</u>

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C.  The brief is prepared in 14 point Times New Roman font.

<u>s/ Roger A Chalmers</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record: Yasha Heidari; Paul Sherman; Mahesha Subbaraman.

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: NONE.

This 16th day of March, 2015.

<u>s/ Roger A Chalmers</u>